## A96A2048. CARLTON v. THE STATE.
### (480 SE2d 336)

BLACKBURN, Judge.

Zinj Y. Carlton was convicted of voluntary manslaughter and possession of a firearm during the commission of a felony in connection with the shooting death of Freddie Blash. On appeal, Carlton contests the sufficiency of the evidence supporting the voluntary manslaughter conviction and challenges two evidentiary rulings made by the court. He also claims his conviction should be reversed because he received ineffective assistance of counsel.

1. "On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses." (Citations and punctuation omitted.) *Hight v. State*, 221 Ga. App. 574 (1) (472 SE2d 113) (1996).

Viewing the evidence in the light most favorable to the verdict, Lenitha Thomas and Joseph Boddie were sitting in Thomas' mother's apartment on January 1, 1993, when Carlton burst through the door and ran inside. Thomas did not know Carlton well and had not invited him in, and when she asked what he was doing there, Carlton replied that he was fleeing from an individual who was threatening to kill him. Thomas told Carlton to leave, but he refused. Thomas' companion Boddie grabbed Carlton in a "bear hug" in an attempt to get Carlton to leave, but was unsuccessful. With Boddie hanging on to the front of him, Carlton climbed the stairs to the second level of the apartment.

Alarmed that Carlton would not leave, Thomas fled the apartment about this time to get help. She encountered a friend, Freddie

Blash, on the sidewalk outside and told him about Carlton's actions. Blash entered the apartment and found Carlton nearly at the top of the stairs and Boddie on the landing above Carlton. According to Boddie, Blash climbed several stairs, reached up, and grabbed Carlton's shoulder. Carlton was standing with his back to Blash, and as Blash told Carlton to leave, Carlton turned around and shot Blash in the chest. Blash died as a result of this wound.

Carlton contends that this evidence is insufficient to sustain his conviction for voluntary manslaughter because the State failed to prove he intended to kill Blash, which is an essential element of voluntary manslaughter. See *McGill v. State*, 263 Ga. 81, 83 (3) (428 SE2d 341) (1993). He argues that the evidence of his intent to kill was entirely circumstantial and that it did not exclude every reasonable hypothesis except guilt. Specifically, he argues that the evidence supports a finding that the shooting was accidental. However, as discussed in Division 3, Carlton did not pursue an accident defense at trial but attempted to show that Boddie killed Blash. "This issue is raised for the first time on appeal and may not be considered." *McCluskey v. State*, 211 Ga. App. 205, 208 (3) (438 SE2d 679) (1993).

With respect to Carlton's intent to kill, criminal intention is a jury question, and a jury's finding on that issue will not be disturbed on appeal unless contrary to the evidence and clearly erroneous. See *Peterson v. State*, 204 Ga. App. 532, 533 (1) (419 SE2d 757) (1992). "Criminal intent rarely can be proved by direct evidence, but its existence may be inferred by the trier of fact upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." (Citations and punctuation omitted.) Id. Additionally, a presumption exists that persons of sound mind and discretion intend the natural and probable consequences of their acts. See *Stubbs v. State*, 220 Ga. App. 106, 108 (469 SE2d 229) (1996); see also OCGA § 16-2-5. The evidence was sufficient to authorize the jury's finding, beyond a reasonable doubt, under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), that Carlton intended to kill Blash, and that he committed the offense of voluntary manslaughter.

2. Carlton contends the trial court committed harmful error by allowing a State's witness, Carlton's former girl friend, to place his character into evidence. Over Carlton's objection, Judith Timberlake testified that Carlton had threatened to kill her and that he had been high on drugs for three days prior to shooting Blash.

The record shows that during direct examination of Timberlake, in response to what he perceived as her lack of cooperation, the prosecutor abruptly abandoned his line of questioning and asked Timberlake if she wanted to be in court, and whether Carlton had threatened her. Before Carlton's counsel could object, Timberlake

answered that she did not want to be in court and that Carlton had not threatened her. Carlton's objection and motion for mistrial were denied, and the question regarding past threats was permitted to show the bias of the witness and her ability to testify. Timberlake was asked twice more if Carlton had threatened to kill her, and Carlton's objections were overruled each time. The last time the prosecutor posed the question, Timberlake admitted that Carlton had previously threatened to kill her but not since he had been in jail.[1]

The introduction of this evidence was clearly error and should not have been permitted. Because of the overwhelming evidence of Carlton's guilt however, it is highly probable that this error did not contribute to the jury's verdict. See *Pardo v. State*, 215 Ga. App. 317, 318 (2) (450 SE2d 440) (1994). Because Carlton presented no evidence, all of the State's evidence is uncontroverted. Carlton had a gun in his pocket, and he shot Blash with that gun. Neither Blash nor his companion, Boddie, was armed. No evidence was presented that the shooting was accidental, see Division 3, and there was no evidence that either Boddie or Blash acted in a way to make Carlton reasonably believe that shooting Blash was necessary in order to defend himself against any imminent threat of harm. See *Jolley v. State*, 254 Ga. 624, 627 (3) (331 SE2d 516) (1985).

Carlton erroneously contends that his character was impermissibly placed into evidence when Timberlake was permitted to testify that Carlton was high on drugs for three days prior to shooting Blash. See *Hestley v. State*, 216 Ga. App. 573, 576 (2) (455 SE2d 333) (1995).

In *Pless v. State*, 260 Ga. 96 (390 SE2d 40) (1990), a witness testified that the defendant had used drugs and alcohol on the day of the incident in question. In response to the defendant's argument that this testimony impermissibly placed his character into evidence, the Supreme Court held that this "was relevant evidence of the defendant's state of mind and admissible as part of the *res gestae*," notwithstanding that it incidentally placed the defendant's character in issue. Id. at 98 (2). In this case, the trial court correctly permitted introduction of Carlton's continuous drug use for the three days prior to his shooting of Blash to show "his state of mind at the time of the killing." See also *Wells v. State*, 261 Ga. 282, 283 (3) (404 SE2d 106) (1991) (evidence of defendant's alcohol use and intoxication on afternoon of shooting not inadmissible despite adverse reflection on defendant's character). This enumeration is therefore without merit.

3. Carlton argues that his conviction must be reversed because

---

[1] In connection with this statement, the trial court gave a curative instruction regarding Carlton's imprisonment. He does not enumerate this portion of the proceedings as error.

he received ineffective assistance of counsel and bases this claim on his trial counsel's failure to request jury charges on felony involuntary manslaughter and accident.

Felony grade involuntary manslaughter occurs when a person "causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony." OCGA § 16-5-3 (a). The evidence shows that Carlton was carrying a gun in his pocket at the time of the shooting, and he argues that the carrying of a concealed weapon was the "unlawful act other than a felony" which justified a charge on felony involuntary manslaughter.[2] See OCGA § 16-11-126.

This argument does not require us to reach the issue of ineffective assistance of counsel, because the evidence did not authorize a charge on felony involuntary manslaughter. "The fact that the weapon which fired and killed the victim was being carried concealed by the appellant in violation of [OCGA § 16-11-126] did not authorize a charge on involuntary manslaughter. It is well established that the essential elements of the crime of involuntary manslaughter in the commission of an unlawful act are, first, intent to commit the unlawful act; and secondly, the killing of a human being without having so intended but as the *proximate result* of such intended unlawful act. . . . The concealment, while unlawful, did not cause the death here. The firing of the gun did so." (Citation and punctuation omitted; emphasis in original.) *Paulhill v. State*, 229 Ga. 415, 417-418 (191 SE2d 842) (1972). Carlton's argument that felony involuntary manslaughter should have been charged based upon his carrying a concealed weapon is therefore without merit, and his ineffective assistance of counsel claim in this regard presents nothing further for our review.

Carlton also contends his counsel was ineffective for failing to request a charge on accident. However, no evidence was adduced at trial regarding accident. The uncontroverted evidence was that Carlton, with his hands in his jacket pockets, turned in a stairwell to face Blash and shot him in the chest. None of the other individuals present had a gun, and nowhere in the record is there any indication that the gun fired accidentally. A charge on accident was not justified by the evidence, because "the gun was held solely by [Carlton] at that time, and . . . there was no evidence of any other circumstances that might have caused the gun to fire other than by [Carlton] pulling the trigger." *Scott v. State*, 261 Ga. 611, 612 (1) (409 SE2d 511) (1991).

Although it is error for a court to refuse to charge on an accused's

---

[2] Although Carlton was convicted of voluntary manslaughter, he was charged with murder. Carlton's counsel did request, and the trial court gave, a charge on the law of voluntary manslaughter.

sole defense, even without request, in this case, accident was not Carlton's sole defense. See *Campbell v. State*, 207 Ga. App. 902, 904 (3) (429 SE2d 538) (1993). In fact, Carlton did not pursue an accident defense at trial, suggesting instead that Boddie shot Blash. The court charged the jury on two other defenses, justification and self-defense, and based on the totality of the evidence presented by the State, no issue of accident was raised by the evidence. See *Bearden v. State*, 163 Ga. App. 434, 435 (4) (294 SE2d 667) (1982). Because "[t]he court is not obligated to give a charge not adjusted to the facts," the court did not err in failing to charge on accident, and Carlton's claim for ineffective assistance of counsel on that basis is without merit. *Asberry v. State*, 193 Ga. App. 711, 712 (1) (389 SE2d 18) (1989).

*Judgment affirmed. Beasley, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JANUARY 22, 1997 —

*Jonathan D. Gaul*, for appellant.

*Lewis R. Slaton, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.